FILED & ENTERED

JUN 24 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gae    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| In re | Case No. 2:12-bk-15800-RK |
|---|---|
| **AUTOSPORT INTERNATIONAL, INC.,** | Chapter 7 |
| Debtor. | **MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR ORDER APPROVING STIPULATION REGARDING VOLUNTARY FEE REDUCTION AND CARVE OUT TO THE GENERAL UNSECURED CLASS OF CREDITORS** |
| | Hearing: April 23, 2013<br>Time: 3:30 p.m.<br>Courtroom: 1675 |

On February 8, 2013, Weneta M.A. Kosmala ("Trustee"), Trustee of the Chapter 7 bankruptcy estate of Autosport International, Inc. ("Debtor"), filed a Motion for order approving a stipulation regarding a voluntary fee reduction and carve out to the general unsecured class of creditors ("Motion"). The Motion was heard before the undersigned United States Bankruptcy Judge on April 23, 2013.

The Motion seeks this court's approval of the compromise, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP"), reached between the Trustee and the Michaels Law Group ("MLG") resulting in a reduction of MLG's professional fees

1

and costs claimed in recovering a major asset of the bankruptcy estate. If these fees are approved, the fees would be paid as administrative expenses pursuant to 11 U.S.C. § 503(b). West Jam, LLC, Jamey Mazzotta, and Deborah Mazzotta (collectively referred to as the "West Jam Parties"), oppose the Motion, arguing that MLG did not comply with reimbursement procedures pursuant to 11 U.S.C. § 503(b). MLG asserts in reply that the fee settlement at issue is within the Trustee's business discretion to enter into, that case law permits exceptions to § 503(b)'s rule of prior approval where emergency circumstances exist, and that because the West Jam Parties are not parties in interest in this proceeding, they lack standing to challenge the Motion. After the hearing on the Motion, the court ordered further briefing on the West Jam Parties' standing to oppose the Motion, last of which was filed on May 14, 2013.

After considering the oral and written arguments of the parties, as well as the supplemental briefing, the court hereby takes the Motion under submission and now issues this memorandum decision on the Motion.

## BACKGROUND

The parties do not dispute the material facts of this case. On June 17, 2011, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C., listing debts totaling $1,243,849.68 and assets of $0. *Petition*, filed on June 17, 2011, at 5. On July 8, 2011, Jonathan Michaels, founder of MLG, informed the Trustee that based upon a recent car purchase from the Debtor before it filed its bankruptcy case, and his legal representation of one of the Debtor's employees, he believed that the Debtor failed to list a number of assets on its bankruptcy petition. *Declaration of Jonathan Michaels in Support of MLG's Supplemental Brief*, April 16, 2013, ¶ 5; *MLG's Supplemental Brief*, April 23, 2013, Exhibit B, Email Entitled "In Re Autosport International, Inc." With the assistance of MLG, a firm specializing in automotive and car dealership matters, the Trustee discovered that a Porsche 962 automobile was not disclosed as an asset on the Debtor's petition. Additionally, MLG determined that the Debtor recently sold this automobile, unbeknownst to the estate, to an Australian national named Rusty French

2

("French"). *Declaration of Jonathan Michaels in Support of MLG's Supplemental Brief*, April 16, 2013, ¶ 7; *MLG's Supplemental Brief*, April 23, 2013, Exhibit D, Email Entitled "Autosport Porsche." The Trustee, with MLG's help, determined that the Porsche was property of the bankruptcy estate and obtained an order from this court for turnover of this asset and a temporary restraining order ("TRO") on August 10, 2011, ordering that the Porsche be delivered to the estate.

On August 18, 2011, through its investigation and research, MLG discovered that Rusty French moved the Porsche from Southern California to Monterey, California, in violation of the TRO. In addition, MLG learned that on or around August 21, 2011, French planned to ship the Porsche to Australia, beyond the reach of the estate and the court. *Declaration of Jonathan Michaels in Support of MLG's Supplemental Brief*, April 16, 2013, ¶ 12-13. Although 11 U.S.C. § 503(b)(3)(B) requires that creditors seeking to be reimbursed for the costs of recovering assets of the bankruptcy estate obtain "the court's approval" before incurring expenses, MLG made the determination that there was insufficient time to obtain prior court approval. *Declaration of Jonathan Michaels in Support of MLG's Supplemental Brief*, April 16, 2013, ¶ 13.

On August 19, 2011, MLG determined that "if it took action immediately to search down the Porsche 962, it would have a chance of finding the Porsche and seizing it for the bankruptcy estate. However, if [MLG] decided instead to petition the court for approval, and wait for the court to grant the approval, valuable time would be wasted and the Porsche could be lost to the bankruptcy estate forever. Given this scenario . . . [MLG] decided to take action." *MLG's Supplemental Brief*, April 23, 2013, at 9-10; *Declaration of Jonathan Michaels in Support of MLG's Supplemental Brief*, April 16, 2013, ¶ 13. MLG traveled to Monterey, California, to attend the Monterey Historic Races, where it believed the Porsche could be located.

On Saturday, August 20, 2011, MLG searched for the Porsche and eventually located the Porsche at a race track in Monterey. Upon finding the Porsche, acting as an agent for the Trustee, MLG served the TRO on French, recovered the Porsche, and

3

1 handled the logistics of having the Porsche transported back to Southern California.
2 *Declaration of Jonathan Michaels in Support of MLG's Supplemental Brief*, April 16,
3 2013, ¶ 13-14. MLG then assisted the Trustee in the valuation and sale of the Porsche,
4 which brought in $630,000 at a sale for the estate. *Declaration of Jonathan Michaels in*
5 *Support of MLG's Supplemental Brief*, April 16, 2013, ¶ 15. In the course of locating,
6 delivering, and assisting in the sale of the Porsche, MLG claims that it performed services
7 resulting in $43,187.50 in attorneys' fees and costs.

8    Trustee negotiated a reduction of MLG's claimed fees and agreed to the amount of
9 upon $20,000. *Declaration of Weneta Kosmala in Support of Trustee's Motion*, February
10 8, 2013, ¶ 4. This compromise was reached by the Trustee after evaluating "the potential
11 strengths and weaknesses of the estate's position [and was negotiated] in an effort to
12 maximize the return to the creditors." *Trustee's Motion* at 4. The "compromise was
13 entered into in good faith and was negotiated at arm's length." *Declaration of Weneta*
14 *Kosmala in Support of Trustee's Motion*, February 8, 2013, ¶ 5.

15    On February 8, 2013, the Trustee filed the instant Motion to have the compromise
16 approved and the reduced fees of MLG paid as administrative expenses pursuant to 11
17 U.S.C. § 503(b). To determine the reasonableness of the fees, the court requested
18 detailed fee statements and/or explanations from MLG of how the fees were calculated
19 and incurred. On April 9, 2013, MLG submitted detailed billing statements to the court for
20 review. MLG asserts that the fee reduction from $43,187.50 to $20,000 constitutes a
21 reasonable fee within the sound business discretion of the Trustee to approve.

22    On February 22, 2013, the West Jam Parties filed an opposition to the Motion for
23 settlement and payment of MLG's fees. The West Jam Parties argue that those fees
24 may not be paid by the bankruptcy estate because MLG did not obtain court approval
25 before performing professional services for the estate as required by 11 U.S.C.
26 § 503(b)(3)(B). *West Jam's Opposition*, filed on February 22, 2013, at 3. MLG argues
27 that when emergency circumstances are involved, the court is permitted to retroactively
28 approve fees.

1  In addition, MLG argues that the West Jam Parties lack standing to oppose the
2  Motion because the West Jam Parties, based on their settlement with the Trustee, are no
3  longer creditors of the estate.  Indeed, on April 4, 2012, this court granted the Trustee's
4  motion to approve settlement between the West Jam Parties and the estate, which
5  settlement waives all claims by the West Jam Parties against the bankruptcy estate.  In
6  relevant part, the settlement provides that "this agreement shall serve as an automatic
7  withdrawal of any and all claims" between the West Jam Parties and the estate.  *MLG's*
8  *Brief on the Issue of Lack of Standing,* April 30, 2013, at 2.  Subsequently, the court
9  entered an order on November 29, 2012, disallowing any claims by the West Jam Parties
10 as creditors of the estate.  The West Jam Parties assert in the alternative that although
11 they waived their claims, they remain creditors through personal guarantees of debts of
12 the debtor.  The West Jam Parties neither cite nor submit any admissible evidence in
13 support of such personal guarantees.

**DISCUSSION**

15 Two legal questions need resolution here.  First, do the West Jam Parties have
16 standing to object to the Motion?  Second, even though MLG's professional fees were
17 incurred without prior court approval, may the court still grant the Motion for compromise
18 under FRBP 9019?  The court concludes that the West Jam Parties do not have standing
19 to oppose the Motion and that the compromise may be approved under Rule 9019
20 because it is fair, reasonable and equitable, especially because MLG has shown
21 exceptional circumstances sufficient to justify retroactive approval under 11 U.S.C.
22 § 503(b).

**A. The West Jam Parties Do Not Have Standing to Oppose the Settlement Motion.**

25 The first issue presented is whether the West Jam Parties have standing to
26 challenge the Motion.  The determination of standing "depends upon whether the party
27 has alleged such a personal stake in the outcome of the controversy . . . as to ensure that
28 the dispute . . . will be presented in an adversary context. . . ."  *Sierra Club v. Morton*, 405

U.S. 727, 732 (1972) (internal citations omitted). There is no doubt that this litigation has presented the court with adequate information in an adversary context, but do the West Jam Parties have a "personal stake" in the subject matter of the litigation? Most often, the party seeking to establish standing must demonstrate this "personal stake" by showing that they "suffered some actual or threatened injury." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979). In addition, the Ninth Circuit has stated that to have standing in a bankruptcy case, a party "must be a 'person aggrieved' by the bankruptcy court's order . . . in other words, the order must diminish the [parties'] property, increase its burdens, or detrimentally affect its rights." *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999) (citation omitted).

First, the West Jam Parties argue that they have standing because they maintain creditor claims against the estate. It is true that creditors have standing to object to settlements; however, on November 29, 2012, this court entered an order disallowing all West Jam Party claims as creditors of the estate. *Order Disallowing Claims Released Pursuant To Settlement*, November 29, 2012, at 2. The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). As the West Jam Parties waived their claims, they no longer have standing as creditors as defined by § 101(10).

Second, the West Jam Parties contend that though they waived their claims, Local Bankruptcy Rule ("LBR") 2016 states that _any_ party may object to an application for compensation. This is an incorrect reading of the rule. The rule, in pertinent part, only allows for "parties in interest" to object. LBR 2016-1(c)(5). The West Jam Parties, by settling with the Trustee to waive their claims against the estate, are not parties in interest for purposes of LBR 2016.

Finally, the West Jam Parties assert (in a brief that is not accompanied by a signed declaration) that they personally guaranteed some of the Debtor's debts, and so

6

have standing as creditors here. The West Jam Parties submitted no declaration signed under penalty of perjury asserting facts to satisfy the definition of a "creditor" under 11 U.S.C. § 101(10), and the West Jam Parties have not submitted any admissible evidence demonstrating a personal guarantee of debts that arose at the time of, or before, the order for relief. Furthermore, even if the West Jam Parties did possess a claim against the estate, they would be judicially estopped from executing that claim because they were given proper notice of the bankruptcy case (they were the owners of the Debtor company), and they failed to file any proof of claim asserting their personal guarantee of debts. *See Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (noting that, "[I]n the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements"). A hypothetical obligation does not transform the West Jam Parties into creditors with standing to oppose the Motion.

In sum, the West Jam Parties lack standing to challenge this Motion because they are unable to show that they possess a personal stake in this case, and so their opposition documents cannot be considered by the court in this matter.

**B. The Terms of the Compromise Are Fair, Equitable, and Reasonable Under Federal Rule of Bankruptcy Procedure 9019, Particularly In Light Of The Fact That The Court Has Authority To Retroactively Approve MLG's Fees.**

The second question presented is whether the compromise is fair, equitable and reasonable under Federal Rule of Bankruptcy Procedure (FRBP) 9019, and specifically, if the court may grant retroactive approval of MLG's professional fees under 11 U.S.C. § 503(b).

The Motion at issue is brought by the Trustee pursuant to FRBP 9019, which states in relevant part that on "motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The Ninth Circuit BAP has pointed out that "the bankruptcy court is vested with considerable discretion in approving

compromises and settlements. To approve a compromise, the bankruptcy court must be satisfied that its terms are fair, reasonable and equitable." *Cavic v. Wolfe (In re Cavic)*, 2009 WL 7809925 at *7 (9th Cir. BAP 2009), *aff'd*, 380 Fed. Appx. 611 (9th Cir. 2010) (internal citations and quotations omitted). The court's discretion is based upon the fact that the "law favors compromise and not litigation for its own sake." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986). To determine if the terms of a compromise are fair, reasonable and equitable, the court must assess four factors: "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.* at 1381. Although the compromise of MLG's fees is not the end-result of "litigation" between MLG and the Trustee, the *A & C Properties* factors are appropriate here because a dispute between MLG and the Trustee from MLG's claim for professional fees, they could have litigated an adversary proceeding concerning the claimed professional fees, and regardless, the Motion for compromise is governed by FRBP 9019.

As to the first *A & C Properties* factor, "the probability of success in the litigation," the key issue is whether the court may grant retroactive approval of the professional fees at issue under 11 U.S.C. § 503(b). If the court has no authority to retroactively approve fees under § 503(b), then the probability of success in the litigation is nonexistent, and approving the settlement would be improper. 11 U.S.C. § 503(b) reads in pertinent part:

> (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.
> (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
>
>   (1) (A) the actual, necessary costs and expenses of preserving the estate including—

8

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by--
> (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor . . .
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant . . . .

The majority of cases hold that recovery of administrative expenses is only permitted under § 503(b)(3) when the party making the claim obtained court approval before incurring the expenses and fees. *In re Blount*, 276 B.R. 753, 758 (Bankr. M.D. La. 2002). This process ensures that the court, in conjunction with the bankruptcy trustee, can manage the estate's liabilities. Despite the fact that the attorney's work in *In re Blount* resulted in the collection of $76,000 for the estate (money the debtor received from a personal injury suit for injuries sustained pre-petition), the attorney's request for administrative fees was denied because he had ample opportunity to seek court approval before embarking on extensive research to verify the monetary award, but did not do so. *Id.*

In contrast, a minority of courts hold that, under exceptional circumstances, approval may be provided retroactively. In *Garber v. National Union Fire Insurance Co.*, the court noted that retroactive approval is available for those "who can establish: (1) a satisfactory explanation for their failure to obtain prior court approval; and (2) that the services significantly benefitted the bankruptcy estate. Although [this rationale originally] arose in the context of § 327 or its predecessor, the reasoning of those cases is equally applicable to requests for compensation under § 503." *Garber v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2006 WL 190843 at *4 (E.D. Cal. Jan. 20, 2006), *citing, In re THC Financial Corp.*, 837 F.2d 389, 392 (9th Cir. 1987). It should be noted that this court chooses to apply the two factors from *Garber* based on the Ninth Circuit's opinion in *THC Financial*

1 rather than the nine factors from *In re Twinton Properties Partnership*, 27 B.R. 817, 819-
2 820 (Bankr. M.D. Tenn. 1983) because the Ninth Circuit has held that it "is not required
3 that every condition enumerated in *Twinton Properties* be considered or met for the
4 bankruptcy court to properly grant [retroactive] approval of professional employment.
5 This court has highlighted variations of two of the conditions . . . where an applicant can
6 show both a satisfactory explanation for the failure to receive prior judicial approval and
7 that he or she has benefited the bankrupt estate in some significant manner." *Atkins v.
8 Wain, Samuels & Co. (In re Atkins)*, 69 F.3d 970, 975 (9th Cir. 1995).

9       MLG and the Trustee explain that on August 19, 2011, MLG faced the choice of
10 either seeking court approval to incur fees to recover the Porsche, which would have
11 delayed recovery, risked losing the car to Australia, and possibly tipped off Rusty French
12 to MLG's recovery plans, or taking swift action to recover the car. The court finds this
13 explanation satisfactory for purposes of *Garber*. *Garber* at *12, *citing, In re THC
14 Financial Corp.,* 837 F.2d at 392. Indeed, MLG's time constraints combined with the
15 potential recovery for the estate presented the type of extraordinary circumstances
16 sufficient to explain why MLG did not seek or obtain prior court approval. As to the
17 second factor of *Garber*, MLG asserts that the cost of $20,000 is a small price to pay in
18 relation to the $630,000 recovered for the benefit of the bankruptcy estate from the
19 recovery and sale of the Porsche. *Garber* at *12, *citing, In re THC Financial Corp.,* 837
20 F.2d at 392. The court agrees and finds that the bankruptcy estate significantly benefited
21 from MLG's work. *See In re Atkins*, 69 F.3d at 979 (retroactively approving fees for a firm
22 that saved the estate over $100,000 in tax liabilities).

23       The West Jam Parties contend in opposition that following the minority view on
24 retroactive approval of administrative claims will set bad precedent. They argue that this
25 will encourage, as noted in *Blount*, "a horde of creditors deputized from the inception of
26 the case, ranging out in the countryside recovering what they can find and bringing it to
27 the court" with an expectation of being paid for their unapproved work. *In re Blount*, 276
28 B.R. 753, 759 (Bankr. M.D. La. 2002). Notwithstanding the fact that the West Jam

Parties do not have standing to oppose the settlement, the court disagrees with this characterization and emphasizes the narrow circumstances upon which MLG's fees are being approved. MLG's fees are being approved retroactively because the Trustee stipulated to such fees at a reduced amount after negotiation, the impending loss of the Porsche to a foreign country within a short window of time presenting extraordinary circumstances, MLG's expertise in automobile-related matters, and the amount of fees being requested are low in proportion to the amount recovered for the estate. This is not to say that these circumstances are a guaranteed formula for future parties to follow when looking to get paid for unapproved work. On the contrary, the retroactive approval of administrative expense claims will always be subject to case-by-case analysis. *See In re Atkins*, 69 F.3d at 976-979. However, all things being equal, as it is the trustee's job to maximize the size of the estate, it is better to err on the side of encouraging parties to engage in efficient work that results in the recovery of significant assets for a bankruptcy estate. *See United States v. Sims (In re Feiler),* 218 F.3d 948, 952 (9th Cir. 2000) (noting that a bankruptcy trustee has the duty "to maximize the assets of the bankruptcy estate to allow maximum recovery for the debtor's creditors"); *see also Stuhley v. Hyatt*, 667 F.2d 807, 809 (9th Cir. 1982) (noting that "[t]he bankruptcy court is a court of equity and must be guided by equitable principles in the effectuation of the policy of the Bankruptcy Act"). In sum, the court holds that the facts of the case at hand warrant retroactive approval of MLG's fees under § 503(b).

Under the first *A & C Properties* factor, The West Jam Parties also argue that due to an alleged conflict of interest, MLG is barred from being paid by the estate, and so has no chance of success in an adversary proceeding. The West Jam Parties contend that MLG represented individuals involved in the Debtor's bankruptcy proceeding (MLG represented Michael Rosi, an early creditor by way of litigation) and that Jonathan Michaels was a creditor of the estate himself, and so MLG cannot be employed or paid by the bankruptcy estate. The West Jam Parties point to 11 U.S.C. § 327(a), which states that professionals employed by a trustee must not "hold or represent an interest

adverse to the estate." Although the West Jam Parties are correct as to employment under § 327, this Motion concerns administrative expenses under § 503. Even if this case were governed by the conflict of interest rules under § 327, MLG was not employed to legally represent the interests of the bankruptcy estate, but worked solely to recover assets for the estate. The work done was to recover the Porsche 962 belonging to the bankruptcy estate and so the court does not see how MLG's alleged conflict of interest negatively impacted the estate. The facts of this case show that MLG was not employed by the Trustee, but incurred administrative expenses, independent of the Trustee, and now seeks to have that money paid. Though MLG did represent a creditor of the estate, the West Jam Parties have not demonstrated that MLG's other work harmed or threatened to harm the estate.

In sum, based on the court's § 503 analysis, the monetary benefit MLG provided for the estate (which will be discussed in greater detail below), and the fact that MLG already reduced their fees significantly, it is the court's conclusion that under the first *A & C Properties* factor, MLG possesses a good case for payment of professional fees under § 503(b), and so it was wise for the Trustee to settle.

The second *A & C Properties* factor, "the difficulties, if any, to be encountered in the matter of collection," is not relevant here because the Trustee was not the party seeking to recover money. As to the third *A & C Properties* factor, "the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it," the court finds that though the dispute is not complex, significant time and energy would have been required to lower the MLG's fee from the proposed settlement at $20,000. It is unlikely the MLG would have acquiesced easily to further lowering their fees, and as MLG could continue litigating with little expense, the dispute could have dragged this litigation on at further cost without much benefit to the bankruptcy estate.

As to the fourth *A & C Properties* factor, "the paramount interest of the creditors and a proper deference to their reasonable views in the premises," the court finds that had the Trustee decided not to settle with MLG, the estate would have been burdened by

12

the expense and delay of litigating a relatively small claim, with minimal reward. The estate already benefited a net $610,000 with the settlement, and fighting for another $20,000 would not have been a good use of time and money of the estate and its creditors. Hours of research, phone calls, email communications, and travel were involved to recover the Porsche for the estate, and the $20,000 in compensation requested is well worth the $630,000 in monetary benefit for the estate. In sum, the court finds that after applying the facts of this case to the *A & C Properties* factors, the compromise was fair, reasonable, and equitable.

It should be noted that, as a separate argument, the West Jam Parties allege an improper relationship between MLG and the attorneys representing the Trustee, sufficient to constitute misconduct on the Trustee's part. However, the court neither sees proof of an improper relationship, nor sees how this alleged relationship negatively and materially impacted the estate. The Trustee engaged the assistance of MLG to recover estate property, the Porsche 962, realizing $630,000 for the estate, and then negotiated MLG's professional fees for assisting the estate down from $43,187.50 to $20,000. In the court's opinion, this was a reasonable exercise of the Trustee's business judgment on behalf of the bankruptcy estate.

Accordingly, the court concludes that the objecting West Jam Parties have no standing to oppose the Motion and that the compromise reached between the Trustee and MLG is fair, reasonable, and equitable, and may be approved under FRBP 9019.

Accordingly, the court will enter a separate order granting the Motion.

Date: June 24, 2013

Robert Kwan
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR ORDER APPROVING STIPULATION REGARDING VOLUNTARY FEE REDUCTION AND CARVE OUT TO THE GENERAL UNSECURED CLASS OF CREDITORS** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **June 24, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

Alessandro G Assanti     agassanti@gmail.com
Robert W Beck     robert.beck@beckandbrowning.com
Reem J Bello     rbello@wgllp.com, kadele@wgllp.com
Jeffrey W Broker     jbroker@brokerlaw.biz
Robert H Dewberry     robert.dewberry@dewlaw.net
Majid Foroozandeh     majidf@foroozandeh-law.com, eugeneh@foroozandeh-law.com;jayn@foroozandeh-law.com;an@foroozandeh-law.com
Jeffrey I Golden     jgolden@wgllp.com, kadele@wgllp.com
Weneta M Kosmala (TR)     Weneta.Kosmala@7trustee.net, ca15@ecfcbis.com;wkosmala@kosmalalaw.com;dfitzger@kosmalalaw.com;kgeorge@kosmalalaw.com
Hutchison B Meltzer     hmeltzer@wgllp.com
Jonathan A Michaels     jmichaels@michaelslawgroup.com
Jonathan A Michaels     jmichaels@michaelslawgroup.com
Tom Roddy Normandin     tnormandin@pnbd.com, nwong@pnbd.com
United States Trustee (SA)     ustpregion16.sa.ecf@usdoj.gov
Gilbert B Weisman     notices@becket-lee.com
Joseph P Wilson     josephwilson@taylorlaw.com

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☒ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:**

Autosport International, Inc.
33 Brookline
Irvine, CA 92618

Charles Ferrari
Law Offices of Charles Ferrari
33 Brookline Ste 200
Aliso Viejo, CA 92656

Hahn Fife & Company
790 E Colorado Blvd 9th Fl
Pasadena, CA 91101,

Randall K Johnson
Johnson & Associates
100 Bayview Circle Ste 3200
Newport Beach, CA 92660

Jaak Olesk
468 North Camden Drive 2nd Fl
Beverly Hills, CA 90210